UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| SYNDICATE SALES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 1:11-cv-00465-SEB-DKL |
| | ) | |
| FLORAL INNOVATIONS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**ENTRY ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Before the Court are Plaintiff's Motion for Summary Judgment [Docket No. 31] and Defendant's Cross-Motion for Summary Judgment [Docket No. 35]. These motions are fully briefed, and the Court, being duly advised, now **DENIES** Plaintiff's motion and **DENIES** Defendant's motion.

**I.    SUMMARY JUDGMENT STANDARD**

Federal Rule of Civil Procedure 56(c)(2) provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c)(2). In ruling on a motion for summary judgment, the admissible evidence presented by the non-moving party must be accepted as true and all reasonable inferences drawn in the non-movant's favor. *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009). However, "[a] party who bears the burden of proof on a particular issue may

not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007). Finally, the non-moving party bears the burden of specifically identifying the relevant evidence of record, and "the court is not required to scour the record in search of evidence to defeat a motion for summary judgment." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001).

Additionally, Federal Rule of Civil Procedure 56(f) gives the district court wide latitude to render judgment that is contemporaneous with, but independent of, the original motion for summary judgment itself, including granting summary judgment to the non-moving party after the movant has received notice and a reasonable opportunity to respond. *See, e.g.*, *In re FedEx Ground Package Sys., Inc., Emp't Practices Litig.*, 758 F. Supp. 2d 638, 661 (N.D. Ind. 2010). The fact that the parties have filed cross-motions for summary judgment does not alter the standard set forth in Rule 56(c)(2). When evaluating each side's motion, the court simply "'construe[s] all inferences in favor of the party against whom the motion under consideration is made.'" *Metro. Life Ins. Co. v. Johnson*, 297 F.3d 558, 561–62 (7th Cir. 2002) (quoting *Hendricks-Robinson v. Excel Corp.*, 154 F.3d 685, 692 (7th Cir. 1998)).

## II.   BACKGROUND

Defendant, Floral Innovations, Inc. ("Floral"), is engaged in the business of manufacturing and distributing bases "made of green floral foam and plastic that hold flowers in a particular shape." Pl.'s Br. at 2. Floral and Plaintiff Syndicate Sales, Inc.

("Syndicate") began negotiating in 2008 for Syndicate to buy Floral's business assets. *Id*. Pursuant to Syndicate's typical valuation process, the parties entered into an agreement on November 17, 2008 that required confidentiality with respect to all information exchanged. *Id*. However, Floral became concerned that Syndicate might use certain facts to compete against Floral in the event the deal fell through. Def.'s Br. at 4. As a result, Floral attached proposed modifications to the agreement, which it claims became conditions precedent to any continued negotiation, and returned the agreement to Syndicate. *Id*. "Syndicate rejected Floral's amendments, but offered Floral an edited version that included the changes Floral requested." Pl.'s Br. at 3. Specifically, Syndicate made an offer of $750,000 for Floral's assets, which Floral rejected. Negotiations ceased shortly thereafter. *Id*. In 2009 and 2010, Syndicate began selling its own version of casket saddles and foam floral bases. *Id*. In 2011, Floral responded by sending a cease-and-desist order to Syndicate, alleging violation of clause 3 of the confidentiality agreement (the "no-copy provision"):

> 3. If an agreement is not reached, Syndicate Sales will not develop any new products that are copies of products that Floral Innovations sold at the time the Confidentiality Agreement was executed until such time as:
>    a. The O'Connell family no longer owns Floral Innovations; or
>    b. The Smithers-Oasis patent expires.

*Id*. at 4. In the cease-and-desist order, Floral stated that Syndicate had breached the no-copy provision by copying Floral's "Never Wilt" products and incorporating them into nine Syndicate Aquaforms products. Pl.'s Ex. 32. These nine products were covered either presently or previously by two patents held by Floral. Never Wilt products SM2000 and SM2001 are single and double casket saddles, respectively, and were

3

previously protected by U.S. Patent No. 3,962,825 (filed Jun. 15, 1976; hereinafter '825 Patent). The patent covered the design for a holder of absorbent foam blocks that supports floral arrangements. '825 Patent. The remaining seven Never Wilt Products, SM2060-2065 and SM2067, were "cross," "wreath," and "open heart"-shaped foam bases and had a water impermeable cup or receptacle to catch excess water dripping from the foam block or blocks that were placed in the bases. U.S. Patent No. 5,693,380 (filed Mar. 8, 1995; hereinafter '380 Patent).

Syndicate subsequently sued Floral seeking declaratory relief, asking the Court to rule that:

> (a) the November 17th confidentiality agreement was not amended;
> (b) amended or not, Syndicate did not breach the November 17th confidentiality agreement by selling its Aquaform products;
> (c) the November 20th agreement is unenforceable to the extent it seeks to extend protections of an expired patent or is otherwise contrary to U.S. patent law;
> (d) the November 20th agreement is unenforceable to the extent that it is a non-compete agreement that is unreasonable as to the time period during which competition is prohibited and the scope of prohibited material;
> (e) Syndicate's Aquaforms products were developed before the November 17th confidentiality agreement was allegedly amended; and
> (f) Syndicate's Aquaforms products are not "any new products that are copies of products that Floral Innovations sold at the time the confidentiality agreement was executed.

Am. Compl. ¶ 23. Floral counterclaimed, alleging common law breach of contract, violation of the Indiana Uniform Trade Secrets Act, civil conversion, and criminal conversion. Floral sought declaratory and injunctive relief. As previously noted, both parties have moved for summary judgment.

## III. Discussion

### A. Plaintiff's Motion

#### 1. Whether Defendant's actions constitute patent misuse *per se*

Syndicate alleges that Floral has engaged in a misuse of its patents. Patent law attempts to protect the public interest in enjoying the fruits of patented material while ensuring that innovators can reap "an immediate and liberal reward." 1 WILLIAM C. ROBINSON, THE LAW OF PATENTS FOR USEFUL INVENTIONS § 20 (1st ed.1890). A patent is, therefore, appropriately viewed as a contract between the patentee and the public. *Id.* Patent misuse occurs when the scope of an otherwise valid patent monopoly extends beyond the prescribed boundaries of the patentee's control. *Zenith Radio Corp. v. Hazeltine Res., Inc.*, 395 U.S. 100, 136 (1969). Courts thus attempt to prevent patent misuse to help balance the competing interests of the interested parties. The district court's primary goal in such a case is to "prevent a patentee from using the patent to obtain market benefit beyond that which inures in the statutory patent right." *Monsanto Co. v. Scruggs*, 459 F.3d 1328, 1339 (Fed. Cir. 2006).

To succeed on a patent misuse claim, the plaintiff must show that "the patentee has impermissibly broadened the 'physical or temporal scope' of the patent grant with anticompetitive effect." *Windsurfing Int'l, Inc. v. AMF, Inc.*, 782 F.2d 995, 1001 (Fed. Cir. 1986) (citing *Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 343 (1971)). Syndicate claims that, taken as true, either of Floral's allegations in its cease-

and-desist letter—(1) that Syndicate based the design for two of its competing products,[1] to wit, the casket saddles, on an expired patent;[2] and (2) that Syndicate sold its remaining designs[3] in violation of the no-copy agreement—constituted patent misuse *per se*. Pl.'s Br. at 7. Syndicate further alleges that Floral attempted to extend its expired patent as it related to SM2000 and SM2001 and suppress competition in favor of its patented products (SM2060-2065 and SM 2067). Pl.'s Br. at 8, 10. Therefore, Syndicate contends that the confidentiality agreement should be deemed void as a matter of law. *Id*.

Floral claims that "[p]atent misuse is an affirmative defense to a suit for patent infringement, not an independent cause of action." Def.'s Br. at 10. In all three cases discussed by the parties, the courts referred to patent misuse as an affirmative defense to a claim of patent infringement. *Energon GmBH v. Erdman*, 13 Fed. App'x 651, 652 (9th Cir. 2001); *B. Braun Med., Inc. v. Abbott Labs.*, 124 F.3d 1419, 1427 ((Fed. Cir. 1997); *Windsurfing Int'l, Inc.*, 782 F.2d at 1001. Moreover, the doctrine of patent misuse has traditionally been applied quite narrowly. *See Princo Corp. v. Int'l Trade Comm'n*, 616 F.3d 1318, 1329 (Fed. Cir. 2010). However, in *Cnty. Materials Corp. v. Allen Block Corp.*, the Seventh Circuit did allow an independent claim for patent misuse to proceed (502 F.3d 730, 734-36 (7th Cir. 2007)). Thus, we decline to hold that such a claim is *per se* barred, and therefore must determine if Syndicate has an actionable claim.

---

1. These designs, SM2000 and SM2001, are referred to as "casket saddles" in Floral's cease-and-desist letter. Pl.'s Br. at 4.

2. '825 Patent, which Syndicate claims expired 20 years ago. Pl.'s Br. at 4.

3. These products, SM2060-2065 and SM 2067, are referred to as "cross," "wreath," and "open heart" designs in Floral's cease-and-desist letter. Pl.'s Br. at 4.

The patent misuse *per se* doctrine has several important statutory and case law limitations. There are several actions that the patentee can undertake that are specifically excluded from patent infringement analysis, even if they would have otherwise constituted patent misuse.[4] 35 U.S.C. § 271(d). Courts, meanwhile, have been reluctant to apply the patent misuse *per se* doctrine broadly. Instances where the doctrine has been recognized and permitted include "'tying' arrangements, in which a patentee conditions a license under the patent on the purchase of a separable, staple good . . . and arrangements in which a patentee effectively extends the term of its patent by requiring post-expiration royalties." *Va. Panel Corp. v. MAC Panel Co.*, 133 F.3d 860, 869 (Fed. Cir. 2006) (citations omitted). Also included are "any attempted reservation or continuation in the patentee or those claiming under him of the patent monopoly, after the patent expires" (*Scott Paper Co. v. Marcaulus Mfg. Co.*, 326 U.S. 249, 256 (1945)) and preventing competition by uncontrolled resale prices. *U.S. v. U.S. Gypsum*, 333 U.S. 364, 397-98 (1948).

Syndicate maintains that Floral's claims in the cease-and-desist letter—that the no-copy provision barred Syndicate from making products based off Floral's expired patent ('825 patent) and making non-infringing products competing with Floral's patented designs—constitute patent misuse *per se*. Thus, the rule of reason is not required. Pl.'s Br. at 7. Specifically, Syndicate argues that Floral was trying to use the confidentiality agreement to both illegally extend the expired '825 patent and suppress legitimate

---

4. These restrictions deal with steps a patentee may take to attempt to combat infringement or contributory infringement. 35 U.S.C. § 271(d). However, since Floral is not alleging patent infringement, they are not relevant to the Court's analysis.

competition by non-infringing products against the products protected by the existing '380 patent. Pl.'s Br. at 8-9. Either of these actions is patent misuse *per se*, Syndicate alleges. *Id*.

Syndicate's reading of patent misuse *per se* does not square with courts' narrow interpretations of the doctrine. In *Cnty. Materials*, which dealt with a limited covenant not to compete and direct competition with a patented product (502 F.3d at 733), the Seventh Circuit refused to apply patent misuse *per se* since it was not an attempt to extend its patent by requiring post-expiration royalties. *Id*. at 735. Syndicate cites several cases in which courts have held that an agreement not to compete against patented technology is patent misuse *per se*.[5] Pl.'s Br. at 9-10. All of these cases, however, dealt with patent license disputes, which is not an issue in this case. Syndicate also cites *Chisum on Patents*, which states that covenants not to compete against patented products have been routinely viewed by courts as patent misuse *per se*. Pl.'s Br. at 10 (citing 6 DONALD S. CHISUM, CHISUM ON PATENTS § 19.04[3][b], at 19-451, 463 (2010)).

There are two flaws with this claim. First, it is not undisputed that this was an attempt to prevent production of competing goods; rather, Floral claims that the products were copies of their goods, rather than merely competing. Def.'s Resp. Br. at 16. Moreover, while the *Cnty. Materials* court did not explicitly rule on whether covenants

---

5. *Berlenbach v. Anderson & Thompson Ski Co.*, 329 F.2d 782, 784 (9th Cir. 1964); *Nat'l Lockwasher Co. v. George K. Garrett Co.*, 137 F.2d 255, 257 (3rd Cir. 1943); *Krampe v. Ideal Indus., Inc.*, 347 F. Supp. 1384, 1387 (N.D. Ill. 1972); and *Park-In Theatres v. Paramount-Richards Theatres*, 90 F. Supp. 730, 734 (D. Del. 1950).

not to compete could ever be analyzed under patent misuse *per se*, it did express in *dicta* its reluctance to apply the misuse *per se* doctrine in that context.[6] 502 F.3d at 735.

Syndicate also argues that the confidentiality agreement is patent misuse *per se* (Pl.'s Br. at 9), that it extends the '380 patent beyond its lawful scope, and that it is preempted by federal patent law. Pl.'s Rep. Br. at 6. There is considerable dispute between the parties over the nature of the confidentiality agreement and what its purpose was. Floral maintains that the confidentiality agreement was, at least in part, a prerequisite to further negotiations. Def.'s Br. at 4. Floral's underlying concern was in having handed over proprietary information to a potential competitor if the deal fell through. *Id*. This is not inconsistent with the purposes of the federal patent system,[7] a prerequisite for federal patent law to preempt state contract law. *Aronson*, 440 U.S. at 262. Because there are conflicting arguments over the parties' intentions with respect to the confidentiality agreement, we cannot conclude, as a matter of law, that the confidentiality agreement constituted an attempt to unlawfully extend the '380 patent or is preempted by patent law. Therefore, Syndicate's motion for summary judgment that the no-copy provision is unenforceable as patent misuse *per se* is DENIED.

---

6. "[W]e have no need to explore further the question whether it makes any economic sense to treat these arrangements so harshly. *See* [*Schieber v. Dolby Labs., Inc.*, 293 F.3d 1014, 1020 (7th Cir. 2002)], which questions the economic soundness of per se condemnation."

7. *See, e.g.*, *Aronson v. Quick Point Pencil Co.*, 440 U.S. 257, 262 (1979):
First, patent law seeks to foster and reward invention; second, it promotes disclosure of inventions, to stimulate further innovation and to permit the public to practice the invention once the patent expires; third, the stringent requirements for patent protection seek to assure that ideas in the public domain remain there for the free use of the public.

### 2. Whether Defendant's actions constitute patent misuse as a matter of law under the rule of reason standard

If the alleged patent misuse does not constitute misuse *per se* or is exempted under 35 U.S.C. § 271(d), the misuse is to be analyzed under the "rule of reason."[8] The rule of reason is applied when a "practice has the effect of extending the patentee's statutory rights and does so with an anti-competitive effect." *Cnty. Materials Corp.*, 502 F.3d at 735 (quoting *Va. Panel Corp*, 133 F.3d at 869).

> Under the rule of reason, the finder of fact must decide whether the questioned practice imposes an unreasonable restraint on competition, taking into account a variety of factors, including specific information about the relevant business, its condition before and after the restraint was imposed, and the restraint's history, nature, and effect.

*Id.* (quoting *Va. Panel Corp*, 133 F.3d at 869).

Floral cites two reasons that defeat Syndicate's actionable claim entitling Floral to summary judgment on the patent misuse issue. First, Floral argues that Syndicate must have evidence that Floral actually used the patents to gain an improper market benefit. Def.'s Resp. Br. at 11-12 (citing *Baum Research & Dev. Co. v. Univ. of Mass.*, 2009 WL 427265 at *7 (W.D. Mich. Feb. 20, 2009)). Syndicate rejoins that the cease-and-desist letter was an attempt to use its existing and expired patents to prevent otherwise valid competing and copied products from entering the market. Pl.'s Rep. Br. at 4. As such, it was an attempt to unlawfully extend Floral's patent monopoly, which is patent misuse

---

[8] Syndicate asks the Court "to note that [Floral] does not dispute that it is proper to analyze the no-copying provision as per se patent misuse . . . A rule-of-reason analysis is thusly not required for the Court to grant plaintiff's summary judgment motion." Pl.'s Rep. Br. at 1. However, *Cnty. Materials Corp.* makes clear that a rule of reason analysis is the next step if a court finds no patent misuse *per se* and there is not a statutory bar to a patent misuse claim. 502 F.3d at 735.

regardless of the form it takes.  *Id*. at 4-5 (citing *U.S. v. Univis Lens Co.*, 316 U.S. 241, 251-52 (1942)).

A resolution of this issue turns on whether the November 17th confidentiality agreement was successfully amended to include the no-copy provision.  If it was so amended, then Floral's cease-and-desist action is in the context of Syndicate's alleged breach of the contract; if it was not so amended, then Syndicate's claim that Floral was unlawfully basing its cease-and-desist letter on its existing and expired patents has merit.  Since, as discussed *infra*, we cannot resolve at the summary judgment stage issues relating to contract modification, we necessarily cannot conclude as a matter of law that Floral did not use its patents to gain an improper market benefit.

Floral's second reason is that it would have had to actually obtain an improper market benefit for there to be actionable patent misuse claim.  Def.'s Resp. Br. at 11-12, 13-14.  Syndicate, however, rejoins that obtaining a market benefit is not a prerequisite to brining such a claim.  Pl.'s Rep. Br. at 5.   The Seventh Circuit has long held that an improper market benefit is a prerequisite to the success of a rule of reason analysis under antitrust law.  *See, e.g., Lektro-Vend Corp. v. Vendo Co.*, 660 F.2d 255, 268 (7th Cir. 1981).  However, our analysis revealed no such holding in a non-antitrust case.  Syndicate cites *Berlenbach*, where the Ninth Circuit found "no merit in appellant's contentions that the proof of substantial lessening of competition is a prerequisite to finding patent misuse."  329 F.2d 782, 784 (9th Cir. 1964).  That court ruled that the non-compete agreement between the parties constituted patent misuse, despite the patentee never enforcing the provision.  *Id.*

11

Syndicate's allegations go further than *Berlenbach* by claiming that Floral has attempted to block "the otherwise free use of an expired patent" (Pl.'s Br. at 8) and the invocation of the no-copy provision to keep non-infringing competing products from the market. *Id*. at 10. We share the view that, as a matter of law, actual improper benefit is not a prerequisite to a claim of patent misuse.

This is not to say, however, that the presence or absence of an improper market benefit is irrelevant in a rule of reason analysis; it can be a substantial factor in determining whether an anticompetitive effect or unreasonable restraint on competition has occurred. But such a determination is a very fact-sensitive inquiry, requiring the analysis of many factors. *See Cnty. Materials Corp.*, 502 F.3d at 735. Numerous disputed issues, such as the purpose of the confidentiality agreement and whether a rule of reason analysis supports a finding of patent misuse, foreclose summary judgment. Syndicate is not entitled to a judgment as a matter of law holding that the no-copy provision and Floral's cease-and-desist letter constituted patent misuse *per se*. Syndicate's motion for summary judgment is therefore DENIED. Likewise Floral's cross-motion for summary judgment on the issue of patent misuse is hereby DENIED as well.

### 3. November 20th amendment is an unenforceable non-compete agreement

Syndicate claims that the no-copy provision, even if properly incorporated as an amendment to the November 17th confidentiality agreement, is an unenforceable non-compete agreement in light of the duration of the agreement and the scope of prohibited material. Am. Compl. ¶ 23(d). Syndicate maintains that its "unenforceable agreement"

claim is independent of its patent misuse claim and thus should not be dismissed based on a grant of summary judgment on the patent misuse issue in favor of Floral. Pl.'s Resp. Br. at 5. Floral did not specifically request this relief in its initial cross-motion or reply brief, and we have declined to grant summary judgment to Floral on the issue of patent misuse. Significantly, the subject matter of sub-paragraph 23(d) is not identical to sub-paragraphs 23(a-b) (the existence of a contract modification, 23(c) (patent misuse), and 23(e-f) (conversion and IUTSA liability. For these reasons, a grant of summary judgment *sua sponte* in favor of Floral on this issue is not appropriate. FED. R. CIV. P. 56(f)(1).

### B. Defendant's Motion

#### 1. Modification of the Confidentiality Agreement

Both Syndicate and Floral agree that a confidentiality agreement was executed on November 17, 2008, after which date Floral sent Syndicate the proposed terms of a no-copy provision. Pl.'s Br. at 2-3; Def.'s Br. at 4. However, their accounts of the negotiations diverge widely after that point in time. Syndicate claims that it rejected Floral's proposed terms, sent Floral a counteroffer which incorporated many of Floral's terms, and asked Floral to agree to sign and return a copy to Syndicate if Floral agreed with the proposed amended agreement. According to Syndicate, it received no confirmation of Floral's acceptance of the no-copy provision terms. Pl.'s Resp. Br. at 2-3. In contrast, Floral claims to have signed and returned a copy of the amended to Syndicate. Def.'s Rep. Br. at 3 (citing O'Connell Depo. at 128, 161). Moreover, Floral

claims that it proceeded with the exchange of confidential information only because both parties had agreed to the no-copy provision. *Id.* at 4.

When, as in the instant case, a written contract does not relate to the sale of goods,[9] the common law "mirror image rule" applies. Under the mirror image rule, the existence of different or additional terms in a response is treated as a counteroffer, regardless of whether the response purports to be an acceptance. *See, e.g.*, *Architectural Metal Sys., Inc. v. Consol. Sys., Inc.*, 58 F.3d 1227, 1230 (7th Cir. 1995) (noting that the "battle of the forms" provision of U.C.C. § 2-207 has replaced the rigidity of the mirror image rule). Syndicate's letter to Floral therefore constituted a counteroffer, which placed an express condition precedent into the terms of the agreement. Thus, because the parties agreed that the only way to modify the contract was through a mutually executed writing, the document required the signature and return by Floral for the no-copy provision to be in effect. Pl.'s Ex. 2 ¶ 37. While Donald O'Connell, an executive with Floral,[10] stated that he signed and returned Syndicate's counteroffer, Def.'s Rep. Br. at 3, citing O'Connell Depo at 128, 161, Syndicate reports that it never received the copy of the signed agreement. Pl.'s Resp. Br. at 4. This disputed fact is central to both Syndicate's and Floral's claims. Am. Compl. ¶ 23(b); Def.'s Answer & Countercl. ¶¶ 15-18. Clearly, then, neither party is entitled to judgment as a matter of law on the issues of

---

9. As such, the contract not governed by Indiana's version of Article 2 of the Uniform Commercial Code. Ind. Code § 26-1-2.

10. Mr. O'Connell's official title with Floral is not included in any of the exhibits. The original confidentiality agreement lists Virginia O'Connell as President, with no title listed for Mr. O'Connell. Pl.'s Ex. 2. However, Ms. O'Connell, Mr. O'Connell, and Floral are collectively referred to as "interested parties" in the agreement. *Id.*

the confidentiality agreement modification and both parties' motions judgments on these issues are accordingly DENIED.

### 2. Plaintiff's products are copies of Defendant's

Floral's remaining three claims—violation of the IUTSA, civil conversion, and criminal conversion—all embrace its allegation that Syndicate misappropriated Floral's assets and confidential trade secret information for its own benefit. Def.'s Answer & Countercl. ¶¶ 20, 25, 29. Floral argues that undisputed deposition testimony by Mr. O'Connell demonstrates that following receipt of Floral's confidential and proprietary business information, when the deal fell apart, Syndicate began producing products that were copies of Floral's products. Def.'s Rep. Br. at 4 (citing O'Connell Depo. at 60, 64-66, 162, 167-68, 176).[11] Floral alleges that Syndicate was making these products since 2009 (for the "casket saddles") and 2010 (for the crosses, wreaths, and open hearts) until at least some time after Floral's March 2011 cease-and-desist letter. Pl.'s Br. at 4.

Floral cites no other evidence in support of this claim. However, Syndicate has produced the affidavit of Linda Utter, its Executive Vice President, to establish that it had been making the disputed products since prior to entering into the confidentiality agreement with Floral, and that its products incorporated patented technologies either owned by or licensed to Syndicate. Pl.'s Resp. Br. at 4 (citing Decl. of Linda Utter, Pl.'s Ex. 15 ¶¶ 8-10). Again, disputed facts critical to a resolution of the legal issues at the

---

[11]Syndicate has not objected to Floral's characterization of Mr. O'Connell's testimony. As neither party has designated the relevant portions of his deposition as evidence, we accept Floral's characterization as true for the purposes of this motion.

presented in this lawsuit foreclose summary judgment. Drawing all reasonable inferences in favor of Syndicate, as we are required to do at this juncture, we conclude that a rational jury could find that Syndicate's products predate the signing of the confidentiality agreement and/or that Syndicate's products were not copies of Floral's.[12] Therefore, Floral is not entitled to judgment as a matter of law on its claims alleging that Syndicate violated the IUTSA and committed civil and criminal conversion, and Floral's summary judgment motion on these claims is hereby DENIED. Syndicate's corresponding motion for summary judgment on these issues is DENIED as well.

### IV.   Conclusion

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is **DENIED** and Defendant's Motion for Summary Judgment is also **DENIED**. The matter shall proceed to trial.

Date: 09/28/2012

_SARAH EVANS BARKER, JUDGE_
United States District Court
Southern District of Indiana

---

[12] Floral asserts that Syndicate "previously admitted that its products were in fact copies of Floral's products." Def.'s Rep. Br. at 5. However, Syndicate stipulated to that fact for purposes of its summary judgment motion only and, in fact, specifically denied that their products were copies of Floral's two paragraphs later. Pl.'s Br. at 5.

Distribution:

Jeffrey C. McDermott
KRIEG DEVAULT LLP
jmcdermott@kdlegal.com

Matthew R. Strzynski
KRIEG DEVAULT LLP
mstrzynski@kdlegal.com

Kurt N. Jones
WOODARD EMHARDT MORIARTY MCNETT & HENRY, LLP
kjones@uspatent.com